UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HENRY TAGGART,

    Plaintiff,

v.

Hamtramck Police Officers JOHN AIELLO,
MICHAEL FEDENIS, and PATRICK
THULL,

    Defendants.

                                /

Case No. 11-15146

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This matter comes before the Court on Defendants John Aiello, Michael Fedenis, and Patrick Thull's motion for summary judgment. Plaintiff Henry Taggart brings this case against three Hamtramck Police Officers in their individual capacities, asserting claims of false arrest and excessive force. For the reasons set forth below, Defendants' motion is GRANTED.

**I.    Facts[1]**

On September 5, 2010, Defendant Aiello was dispatched via radio of a possible drunk

---

[1] There are extensive facts in the record about Plaintiff's history, what he was doing and how he was feeling before being pulled over, and what happened when he was booked at the station. None of those facts are relevant to the issues of false arrest and excessive force, which are viewed from the knowledge and perspective of the officers involved at the time.

driver going north on Joseph Campau in Hamtramck who was swerving and nearly striking several vehicles. (Aiello Dep. 15:14-16.) Defendant Aiello pulled up behind Plaintiff while Plaintiff was stopped at a stoplight. (*Id.* at 17:3-7.) When the light turned green, Plaintiff proceeded northbound and within a one-block distance, he swerved twice, crossing the double yellow line. (*Id.* at 19:8-11.) At this point Defendant Aiello activated his lights and siren and attempted to pull Plaintiff over. (*Id.* at 19:13-14.) Plaintiff continued to drive, neither slowing down nor speeding up, and went through a red light without stopping or touching his brakes. (*Id.* at 19:14-19.) Defendant Aiello got on the radio and advised dispatch that he needed another car to cut him off because Plaintiff was not pulling over. (*Id.* at 21-24.) Defendants Fedenis and Thull cut Plaintiff off with their vehicle and Plaintiff stopped driving. (*Id.* at 19:23-25.)

Officers Fedenis and Thull had a camera in their patrol car that videotaped most of the incident. The video shows Defendant Aiello approach Plaintiff's car and tell Plaintiff to get out of the car. Defendant Aiello waits for Plaintiff to get out, which takes about 25 seconds from the time Defendant Aiello opens the car door. Defendant gets out of the car on his own and Defendant Aiello tells him to go toward the back of the car to get out of the flow of traffic. Defendant Aiello puts his hand on Plaintiff's right elbow, like Defendant Aiello is helping lead or steady Plaintiff, and Plaintiff jerks his arm away and says something to Defendant Aiello. Plaintiff continues walking toward the back of the car, Defendant Aiello puts his hand lightly on Plaintiff's back. When Plaintiff reaches the back of the car, he leans against it for support. Defendant Fedenis testified that Plaintiff was really wobbly and unsteady on his feet and seemed disoriented. (Fedenis Dep. 15:4-6, 16:5-6.) Plaintiff testified that when he his sugar levels drop, he staggers and sometimes falls and has

difficulty speaking. (*Id.* at 65:18-66:2.)

Defendants and Plaintiff talk at the back of the car for a minute, Defendants telling Plaintiff why they pulled him over and asking him questions. (Arrest Video.) Defendant Aiello asked Plaintiff if he had been drinking, and Plaintiff responded that he had not been drinking and was sick. (Aiello Dep. 24:24-25:4.) On Defendant Aiello's car audio, Defendant Aiello states, "Everything OK? You OK? What's the matter? . . . You're sick? You have anything to drink today? You haven't? OK. Well, I was watching you drive and you were swerving all over . . . " (Def. Aiello Car Audio.) Defendant Aiello then gives a list of the reasons that he pulled Plaintiff over, including his swerving, going through a red light, and stopping at a green light.

In the video, at one point, Plaintiff leans forward toward and takes a step away from the car and in the direction of Defendant Aiello and the street, and Defendant Aiello puts his hand up and on Plaintiff's chest to push him back. Defendant Aiello stated that he did not view this as a threatening move, but wanted Plaintiff not to take a step toward the street where traffic was still flowing. (Aiello Dep. 28:3-8.)

Then Defendants walk Plaintiff to the other side of the car so that the car is between them and the street. The car obstructs a complete view of what happens next. Defendants Aiello and Fedenis are talking to Plaintiff and it appears that Defendant Fedenis reaches for Plaintiff's arm or arms or something by Plaintiff's waistband. Plaintiff tries to jerk his arm away and that is when Defendants Aiello and Fedenis try to place Plaintiff in handcuffs. Defendant Aiello testified that Plaintiff was arrested for resisting and obstructing. (Aiello Dep. 35:20-21.) On the car audio, Defendant Aiello can be heard, saying, "Now you are under arrest. Don't resist. Put your hands behind your back. Do it now." (Def. Aiello Car

Audio.) On the video, Defendants Aiello and Fedenis are each attempting to grab one of Plaintiff's arms, and they take Plaintiff to the ground, where he cannot brace his fall and he falls over the curb on his torso. It takes Defendants about 30 seconds, while Plaintiff is on the ground, to handcuff his hands behind his back.

During this time, Defendant Thull is kneeling on Plaintiff's rear end to immobilize him and prevent him from possibly rolling out of their custody. (Arrest Video; Def. Partick Thull Dep. 21:6-11.) Defendants Aiello and Fedenis appear to be struggling to get Plaintiff's arms behind his back. Once he is handcuffed, Defendants help him up, put him in Defendants Fedenis and Thull's patrol car, and take him to the station. While Defendants Fedenis and Thull escorted Plaintiff to the car, Defendant Aiello notified dispatch to have EMS meet Plaintiff at the station. (Aiello Dep. 52:10-13.) Defendant Aiello testified that whenever he takes someone to the ground or has to lay a hand on someone who is resisting, he calls EMS "to check on them to make sure that they are okay." (*Id.* at 52:15-18.)

At the time they placed Plaintiff under arrest, Defendant Fedenis suspected that Plaintiff was under the influence of something, stating, "I suspected it was a possibility of something; I wouldn't just say he was drunk, it could have been anything, I mean I wasn't sure at the time." (Fedenis Dep. 24:25-25:5.) Defendants did not smell alcohol on Plaintiff's breath. (Fedenis Dep. 21:18-19).

Plaintiff testified that he has no recollection or memory of the incident and that he did not know what was happening or where he was at the time. (Pl. Dep. 47:12-48:2.) His only recollection is that he thinks he was leaning up against the car and kept telling the police officers that he was sick. (*Id.* at 58:20-59:9.) The first thing Plaintiff remembers after the

4

incident was the EMS person giving him the glucose, which started bringing him around to his normal senses. (*Id.* at 71:1-22.) Plaintiff testified that he would have been in no condition to be able to blow into a breathalyzer. (Pl. Dep. 70:16-18.)

The first time Defendant Fedenis heard anything about Plaintiff having diabetes or that his behavior might be linked to a diabetic reaction was after EMS had left and Plaintiff had already been booked. (Fedenis Dep. 32:6-15.) Defendant Aiello learned that Plaintiff was suffering from a sugar deficiency or diabetic episode after EMS examined Plaintiff. (Aiello Dep. 53:23-54:1.)

That night, Plaintiff went to the hospital for arm pain and learned that he had an acute left elbow fracture and acute left elbow dislocation and needed immediate surgery. (Pl. Resp. Ex. 4.)

## II. Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party may meet that burden "by 'showing' – that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Revised Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The revised Rule also provides the consequences of failing to properly support or address a fact:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>    (1) give an opportunity to properly support or address the fact;
>    (2) consider the fact undisputed for purposes of the motion;
>    (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or
>    (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, drawing "all justifiable inferences in the light most favorable to the non-moving party," *Hager v. Pike Cnty. Bd. of Educ.*, 286 F.3d 366, 370 (6th Cir. 2002).

### III. Analysis

Plaintiff brings this action under 42 U.S.C. § 1983, alleging that Defendants violated his constitutional rights by unlawfully arresting him and using excessive force. Defendants claim that they are protected by qualified immunity and their actions were objectively reasonable.

A defendant government official enjoys qualified immunity on summary judgment unless the facts, when viewed in the light most favorable to the plaintiff, would permit a

reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established. *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394 (6th Cir. 2009). Once it is determined that the right is clearly established, the court must determine "whether the plaintiff has alleged sufficient facts supported by sufficient evidence to indicate what [the officer] allegedly did was objectively unreasonable in light of [the] clearly established constitutional rights." *Dickerson v. McClellan*, 101 F.3d 1151, 1158 (6th Cir. 1996) (quoting *Adams v. Metiva*, 31 F.3d 375, 387 (6th Cir.1994)) (alteration in original).

Where a defendant raises a qualified immunity defense, the plaintiff then bears the burden of proving that the defendant is not shielded by qualified immunity. *Walters v. Stafford,* 317 F. App'x 479, 485 (6th Cir. 2009). Application of the qualified immunity doctrine is a matter of law for the court. *Dickerson,* 101 F.3d at 1157. The inquiry is conducted from the perspective of the officers, considering only the facts they knew at the time of the incident. *Id.* at 1155.

The test for qualified immunity is meant to be highly deferential to officials, protecting "all but the plainly incompetent or those who knowingly violate the law." *Humphrey v. Mabry*, 482 F.3d 840, 847 (6th Cir. 2007) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). The official will be immune "if officers of reasonable competence could disagree on whether the conduct violated the plaintiff's rights." *Id. (*internal quotation marks and citation omitted). As the Sixth Circuit has stated, the Fourth Amendment "does not require officers to use the best technique available as long as their method is reasonable under the circumstances." *Dickerson,* 101 F.3d at 1160.

Even defendants who have in fact violated constitutional rights may be protected if their actions were nevertheless objectively reasonable at the time of the violation. *Davis*

*v. Scherer,* 468 U.S. 183, 190 (1984). *See also O'Brien v. City of Grand Rapids,* 23 F.3d 990, 1000 (6th Cir. 1994) (concluding that the officers were not, in law, excused from obtaining a warrant "but we cannot say that no reasonable officer . . . could conclude that there were exigent circumstances excusing the requirement that a warrant be obtained").

### A. Unlawful Arrest

It is clearly established that a person has a Constitutional right to be free from unlawful seizures. A law enforcement officer may not seize an individual except after establishing probable cause that the individual has committed, or is about to commit, a crime. *Beck v. Ohio*, 379 U.S. 89, 91 (1964). The Supreme Court has defined probable cause, at least for the purposes of making an arrest, as the "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. Defillippo,* 443 U.S. 31, 37 (1979). In ascertaining probable cause, police officers are entitled to rely on information provided by a police dispatcher and presume that information is accurate and reliable. *Feathers v. Aey,* 319 F.3d 843, 851 (6th Cir. 2003).

Plaintiff does not dispute that Defendants had the right to pull Plaintiff over. Plaintiff contends, however, that Defendants knew or should have known that Plaintiff was not intoxicated and was suffering from a medical emergency. Defendant Aiello testified, however, that Plaintiff was not arrested for driving while intoxicated; he was arrested for resisting and obstructing.

The video shows Plaintiff unsteady on his feet and leaning on his car to keep his balance. Defendants testified that they were unsure if Plaintiff had been drinking or using

another illegal substance, but that he became agitated and aggressively resisted their attempts to help keep him steady and keep his arms up and away from his waistband. When Plaintiff rejected Defendants attempts to move his arms, he flung his arms, and Defendants Aiello and Thull arrested him for resisting.

Because Plaintiff does not remember the incident, Plaintiff relies on the video to assert his claims. In this case, the video clearly shows Plaintiff jerking away from Defendants right before they arrest him. Defendants' motion for summary judgment on Plaintiff's claim for false arrest is GRANTED.

### B. Excessive Force

In *Graham v. Connor,* 490 U.S. 386 (1989), the Supreme Court held that the use of excessive force during an arrest, and investigatory stop or any other "seizure" of a person at liberty is judged by the Fourth Amendment. A court must evaluate the officers' conduct "under the Fourth Amendment's 'objective reasonableness' standard." *Roberts v. Manigold*, 240 F. App'x 675, 677 (6th Cir. 2007) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 197 (2004). A police officer may use only such force as is objectively reasonable under the circumstances. *Graham*, 490 U.S. at 397. In evaluating the reasonableness of force used, courts should examine "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

The court should judge the lawfulness of the conduct from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Id.* at 396. "This standard contains a built-in measure of deference to the officer's on-the-spot

judgment about the level of force necessary in light of the circumstances of the particular case." *Burchett v. Kiefer,* 310 F.3d 937, 944 (6th Cir. 2002).

The reasonableness of the use of force is not judged from the subjective perspective of the plaintiff. *Goodrich v. Evereff*, 193 F. App'x 551, 555 (6th Cir. 2006). "Not every push or shove, even if it may later seem un necessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 US at 396. The Sixth Circuit, however, has held that force against a neutralized person is objectively unreasonable. *Phelps v. Coy,* 286 F.3d 295, 301 (6th Cir. 2002).

In this case, when Defendants arrested Plaintiff, they forcefully brought him down to the ground and struggled with him for almost 30 seconds to try to get both his hands handcuffed behind his back. In the video, it is clear that just before Defendants grabbed Plaintiff to arrest him, Plaintiff jerked away from Defendant Fedenis. At that point, Defendants reasonably viewed Plaintiff as resisting and attempted to handcuff him.

While it is unfortunate that Plaintiff's elbow was seriously injured in the process, it was not objectively unreasonable for Defendants to arrest Plaintiff, attempt to handcuff him, and bring him to the ground in order to do so. There is no evidence that Defendants used any force on Plaintiff before he resisted them. And there is no allegation or evidence that Defendants used any force on Plaintiff once they were able to secure him in his handcuffs. The arrest video does not show a scene of officers subjecting a compliant person to excessive and unreasonable force.

Defendants' motion for summary judgment on the excessive force charge is GRANTED.

**IV.   Conclusion**

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED.

      s/Nancy G. Edmunds
      Nancy G. Edmunds
      United States District Judge

Dated:  August 6, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 6, 2012, by electronic and/or ordinary mail.

      s/Carol A. Hemeyer
      Case Manager